UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BENJAMIN W. MITCHELL, JR.,                         07 Civ. 8268 (PKC)

                Plaintiff,

   -v-


PRISON HEALTH SERVICES, INC., ROBERT
DE GUZMAN, M.D., Official Capacity, MS.
DAVIS, Nurse, MS. BAPTISTE, RN, Official
Capacity,

                Defendants.
------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
## PURSUANT TO F.R.C.P. RULE 12(b)(6)


Of Counsel:
Paul Stuart Haberman

541934.1

# TABLE OF CONTENTS

Table of Authorities.................................................................................................iii

INTRODUCTION........................................................................................................1

FACTUAL BACKGROUND........................................................................................1

PROCEDURAL HISTORY..........................................................................................3

ARGUMENT................................................................................................................4

### POINT I

**PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 CLAIM**............................................................................................4

### POINT II

**PLAINTIFF FAILS TO STATE A CLAIM OF DELIBERATE INDIFFERENCE**...........................................7

    i.    Plaintiff fails to allege a medical need that was sufficiently serious or a claim of serious injury............................................................8

    ii.   Plaintiff fails to show that Defendants acted with a culpable state of mind................................9

    iii.  Plaintiff's allegations, at best, demonstrate mere negligence or a disagreement over the appropriate medical treatment......................11

### POINT III

**PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF PENDENT JURISDICTION**..................................................................11

    i.    If Defendants' motion to dismiss is granted, the Court should exercise its powers under 28 U.S.C. § 1367 and decline supplemental jurisdiction over any state law claims................11

    ii.   Even if the Court denies the motion to dismiss the federal claims, it should decline

jurisdiction over the state law claims as they fail to state a cause of action……………………..12

CONCLUSION…………………………………………………………………..12

# TABLE OF AUTHORITIES

## CASES

Board of County Commissioners of Bryan County v.
Brown, 529 U.S. 397, 117 S. Ct. 1382 (1997)……………………………………….…..4

Caldwell v. United States, 992 F. Supp. 363 (S.D.N.Y. 1998)…………………………..10

Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108
S. Ct. 614 (1988)…11

Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998)……………………………...7, 8, 11

City of Los Angeles v. Heller, 475 U.S. 796 (1986)……………………………………...7

Culp v. Koenigsmann, 2000 WL 995495 (S.D.N.Y. 2000)……………………………8, 9

DiMitri v. Monsouri, 302 A.D.2d 420, 754 N.Y.S.2d 674 (2d Dep't 2003)…………….12

Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed 2d
251 (1976)………………………………………………………………………………...7

Farmer v. Brennan, 511 U.S. 925 (1994)…………………………………………………7

Harding v. Kuhlmann, 588 F. Supp. 1315 (S.D.N.Y. 1984)………………………………8

Harrison v. Barkley, 219 F.3d 132 (2d Cir. 2000)………………………………………...7

Hathaway v. Coughlin, 99 F.3d 550 (2d Cir. 1996)……………………………………8, 9

Hemmings v. Gorcyzk, 134 F.3d 104 (2d Cir. 1998)……………………………………...9

LaBounty v. Coughlin, 137 F.3d 68 (2d Cir. 1998)………………………………………8

Monell v. Dept. of Social Services of the
City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978)………………………………4, 5

Oklahoma City v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427 (1985)…………………………5

Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994)…………………………………………...11

Ross v. Kelly, 784 F. Supp. 25 (W.D.N.Y. 1992)………………………………………..10

Sarus v. Rotondo, 831 F.2d 397 (2d Cir. 1987)…………………………………………...5

Stubbs v. Dudley, 849 F.2d 83 (2d Cir. 1998)..................................................................11

Vippolis v. Village of Haverstraw, 768 F.2d 40 (2d Cir. 1985),
*cert. denied*, 480 U.S. 916 (1987)....................................................................................5

West v. City of New York, 1996 WL 240161 (S.D.N.Y. 1996)........................................7

Williams v. Keane, 940 F. Supp. 556 (S.D.N.Y. 1996)...................................................10

Wilson v. Seiter, 501 U.S. 294 (1991)..............................................................................11

Woodrow v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006)....................................................6

### STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1367.........................................................................................................11, 12

42 U.S.C. § 1983.................................................................................................1, 4, 7, 11, 12

42 U.S.C. § 1997e(a).............................................................................................................6

Federal Rule of Civil Procedure 12(b)(6)..............................................................................1

Prisoner Litigation Reform Act § 7(2)(g)(2)........................................................................3

United States Constitution Amendment VIII.......................................................................7

United States Constitution Amendment XIV......................................................................7

## INTRODUCTION

Defendants PRISON HEALTH SERVICES, INC. (hereinafter "PHS"), ROBERT DEGUZMAN, M.D., ALMA L. SCOTT-BAPTISTE, R.N., a/s/h/a "MS. BAPTISTE," and DAWNETTE HENRY DAVIS, R.N., a/s/h/a "MS. DAVIS" move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12 (b)(6), as Plaintiff has not asserted a proper cause of action against Defendants under 42 U.S.C. § 1983. Plaintiff also alleges that Defendants, members of the medical staff of Rikers Island Correctional Facility (hereinafter "Rikers"), committed medical malpractice and deprived him of his civil rights by failing to adequately maintain and remove a "Mediport" placed in his chest for the administration of chemotherapy. Plaintiff demands an award of Five Million Dollars ($5,000,000.00) and unspecified injunctive relief. Plaintiff fails to demonstrate a sufficiently serious injury, fails to demonstrate that Defendants acted with deliberate indifference, and fails to adequately identify and describe the facts and circumstances related to his claim. Plaintiff's allegations that his civil rights were violated because he was denied proper medical treatment amount to, at most, a claim of medical malpractice. Accordingly, Defendants respectfully request that this Court dismiss Plaintiff's complaint.

## FACTUAL BACKGROUND

Plaintiff Benjamin W. Mitchell, Jr. was, at all relevant times, incarcerated at Rikers pending trial for Robbery in the First Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Second Degree. Exh. A. He has since been convicted and is now serving a 12-year prison sentence at Upstate Correctional Facility in Malone, New York.

A fair reading of the Complaint reveals that Plaintiff's claims sound in allegations of medical malpractice. Plaintiff further claims that the Defendants showed deliberate

541934.1                                                    1

indifference to his health and safety to the extent that his civil rights were violated. See Exh. B. Plaintiff claims that the Defendants failed to adequately "flush" a Mediport that had been placed in his chest for chemotherapy to treat gastric cancer. Defendants also are alleged to have failed to remove the Mediport when it was found that Plaintiff no longer had cancer. Id. Plaintiff is seeking relief for mental anguish and a violation of his constitutional right against cruel and unusual punishment allegedly caused by Defendants' acts or omissions. Id.

      Plaintiff was diagnosed with gastric cancer at Jamaica Hospital in Queens, New York in September 2005. Exh. C. Following the diagnosis, a Mediport was implanted in Plaintiff's chest beneath the skin and connected to a vein via a catheter. The Mediport was required for infusion of medications as Plaintiff underwent chemotherapy. Exh. B.

      In February 2006, Plaintiff was seen at Lenox Hill Hospital for a pre-surgery work-up related to his cancer. Exh. C. Prior to the scheduled surgery, he was arrested and incarcerated at Rikers. He was thereafter seen at Rikers for a surgical followup on February 16, 2006, by Defendant Dr. DeGuzman. Exh. C.

      On February 22, 2006, Plaintiff was seen by Defendant Baptiste, a registered nurse, at the G.R.V.C. Medical Clinic (hereinafter the "Clinic") at Rikers. Exh. B. Ms. Baptiste "flushed" Plaintiff's Mediport and left instructions in his medical chart indicating that the Mediport should be "flushed" monthly. Id.; Exh. C. The medical record indicates that over the next 17 months, Plaintiff's Mediport was "flushed" by Defendant Davis and other medical personnel at least eight times. Exh. B. Plaintiff claims no health problems occurred as a result of the Defendants' maintenance of the Mediport. He alleges instead that he was concerned that "[a]n infection could have set in at anytime[.]" Id.

541934.1
      2

Plaintiff appends to his Complaint pages from a Bellevue Hospital Center treatment record for May 2006. The record indicates that Plaintiff underwent a biopsy, laparoscopy and ultrasound. He claims that these records indicate that by May 2006 he showed no sign of gastric cancer. Id. Plaintiff further claims that an endoscopy and biopsy in April 2007 at Bellevue Hospital Center revealed the same result. After the May 2006 examination, Plaintiff claims that he sought to have the Mediport removed, but that the device remained in his chest until August 2007. Id. As a result, Plaintiff claims that he was "not able to go to the yard for the eighteen months on Rikers Island. . .[as] per doctor Guzman instructions." In his "Grievance" dated May 23, 2007, Plaintiff claims that he was not able "to get any fresh air per (PHS) Doctors," because he could "not go to the yard until Mediport is removed." Exh. D. Plaintiff also claims in his "Grievance" that if he were "harmed or attacked in any way it could be fatal." Id. He claims Defendants' alleged failure to remove the Mediport caused him to "fear for my life everyday." Exh. B.

## PROCEDURAL HISTORY

Plaintiff filed a Complaint on September 24, 2007. An Amended Summons was issued on January 14, 2008, and the case was determined to fall under the Prisoner Litigation Reform Act § 7(2)(g)(2). On March 18, 2008, Plaintiff requested an extension of time to serve Defendants, and the Court served Plaintiff with an endorsed letter on March 26, 2008, indicating that he should take all steps necessary to ensure that his Complaint and Summons were served promptly. The Court indicated that there were "no allegations against The City of New York" in Plaintiff's Complaint and that he should amend his Complaint before the Defendants serve a responsive pleading. Plaintiff was instructed to secure an additional Summons for The City of

New York. In April 2008, Plaintiff, through the U.S. Marshals, served a Summons and Complaint upon all Defendants.

On April 22, 2008, Plaintiff filed an "Amended Complaint" in a case under docket number 08-CV-03783 (RJH). Upon information and belief, this "Amended Complaint" may be responsive to the Court's March 26, 2008 instruction, as the Complaint apparently names as defendants the City of New York and Warden Robert Shaw. The "Amended Complaint" has not been received by defense counsel's office nor has it been served upon any of the Defendants in the instant action or any party named in the subsequent pleadings. This second action was addressed in a letter to the Court dated May 13, 2008. Exh. E.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 CLAIM

Plaintiff fails to assert a claim against Defendants for a violation of his civil rights and deliberate indifference related to the care and treatment of his medical condition. Viewed most favorably to Plaintiff, the Complaint makes a claim for medical malpractice against Defendants. Such a claim is not actionable under 42 U.S.C. § 1983. Because this Court does not have pendent jurisdiction over medical malpractice claims, the Complaint against PHS should be dismissed.

A plaintiff must show the existence of an officially adopted policy or custom and a deprivation of a constitutional right in order to sustain a claim for relief under 42 U.S.C. § 1983. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978); see also Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1388-89 (1997). Plaintiff must demonstrate that an identified municipal policy, practice, or custom was the "moving force [behind] the constitutional violation." Sarus v.

Rotondo, 831 F.2d 397 (2d Cir. 1987) (quoting Monell, 436 U.S. at 694); Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 824, n. 8, 105 S. Ct. 2427 (1985) (holding that plaintiff must establish a causal connection between the policy and the deprivation of the constitutional right). Liability cannot be found under a theory of respondeat superior. Monell, 436 U.S. at 691-694.

In the instant matter, Plaintiff fails to identify any "policy, practice or custom" in effect at Rikers that violated his constitutional rights. The documents appended by Plaintiff to his Complaint indicate that placement of the Mediport was warranted, that there may have been a discussion about removing the device at some point in time, and that Plaintiff thinks the Mediport should have been "flushed" more often than he claims occurred during his time at Rikers. Exh. B. Plaintiff alleges no injury as a result of the placement of the Mediport, nor does he claim an injury resulted from the alleged failure to "flush" the device more than eight times in 17 months. Instead, Plaintiff claims only that his "right to exercise in the yard" was effected, an "infection could have set in at anytime," and that he "fear[ed] for my life everyday." Exhs. B, D.

Plaintiff concedes that "(PHS) Doctors" warned him that he should not "go to the yard until the Mediport is removed," presumably because any damage or impact to the device as a result of activities in the yard posed a risk of injury. Exh. D. Assuming *arguendo* that the alleged statements by the Defendant medical personnel were made in furtherance of a "policy, practice or custom" of treatment, such care arguably was in the best interest of Plaintiff. None of Plaintiffs' claims qualify as a serious injury, and such a "policy" or "custom" of treatment is not of a nature that is actionable by this Court. Moreover, liability on behalf of the municipality or an agency for any statement or action made or taken by the individual medical personnel falls

under the rubric of respondeat superior, and are expressly precluded under federal law. Monell, 436 U.S. at 691-694.

Plaintiff's purported "Grievance" letter, dated May 23, 2007, Exh. D, bears no address and appears on plain paper with no indication as to its point of origin. In the "Grievance," Plaintiff requests an appointment be made so that medical personnel can remove his Mediport at Bellevue Hospital Center. Id. Plaintiff claims that this "Grievance" was his "second attempt to resolve this matter," id., but never does he indicate in his Complaint when a previous "Grievance" was made. Other than an *ipse dixit* allegation that Plaintiff gave a copy of this "Grievance" to a "Captain," exh. B, there is no showing Plaintiff made known his "grievance" prior to May 23, 2007, or that a custom or policy at Rikers resulted in the complaint being ignored. This suggests that Plaintiff did not exhaust all administrative remedies, as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). See Woodrow v. Ngo, 548 U.S. 81, 83, 126 S.Ct. 2378 (2006).

The exhibits attached to Plaintiff's Complaint raise questions as to the nature of his cancer. While Plaintiff claims that he was told that he was free of cancer in May 2006, exh. B, "Exhibit D" contains a notations indicating "Chronic- HTN, DM, Ca stomach" through at least November 2006. Exh. E. Upon information and belief, the purpose of a Mediport is to provide access for the administration of medications and chemotherapy. The notation in Plaintiff's medical record suggests that there was a valid medical reason for continued placement of the Mediport in the event that further treatment was necessary. Assuming *arguendo* that there was a "policy, practice or custom" at Rikers that an inmate's Mediport remain placed to provide access for medication administration, such policy or practice would be in the best interest of the inmate and not a violation of his constitutional rights.

Viewing the aforementioned allegations in a light most favorable to Plaintiff, the inmate has not alleged a constitutional violation. "Before a municipality can be liable on the basis of a policy or custom, a plaintiff must identify an underlying constitutional violation." West v. City of New York, 1996 WL 240161, * 4 (S.D.N.Y. 1996) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Plaintiff does not provide in his Complaint facts sufficient to establish that Defendants were negligent or committed medical malpractice, nor does Plaintiff allege facts indicating a violation of his constitutional rights as a result of a municipal policy or custom of practice. As Plaintiff has failed to make such a *prima facie* showing, Defendants' motion to dismiss must be granted.

## II. PLAINTIFF FAILS TO STATE A CLAIM OF DELIBERATE INDIFFERENCE

To make a claim under 42 U.S.C. §1983 for deprivation of medical treatment in violation of the Eighth Amendment, a plaintiff must show that the defendant acted with "deliberate indifference" to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed 2d 251 (1976); Harrison v. Barkley, 219 F.3d 132 (2d Cir. 2000); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). For liability to attach, a plaintiff must show that the physician acted or failed to act with reckless disregard to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 925 (1994). Further, a plaintiff must show that the physician acted or failed to act with a "sufficiently culpable state of mind." Id. This standard applies to § 1983 claims arising under both the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. It "will generally not be met by allegations of medical malpractice." Estelle, 429 U.S. at 105-106.

In order "[t]o succeed in showing deliberate indifference, [plaintiff] must show that the acts of the defendants involved more than a lack of due care, but rather involved

obduracy and wantonness in placing his health in danger." LaBounty v. Coughlin, 137 F.3d 68, 72-73 (2d Cir. 1998). To satisfy this burden, a plaintiff must establish that: (1) there was intentional efforts by prison officials to delay his access to medical care at a time when he was in extreme pain; or (2) prove a complete denial of medical treatment; or (3) prove a reckless or callous indifference to his serious medical needs. Harding v. Kuhlmann, 588 F. Supp. 1315, 1316 (S.D.N.Y. 1984), aff'd, 762 F.2d 990 (2d Cir. 1985). "[T]he deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

> i. **Plaintiff fails to allege a medical need that was sufficiently serious or a claim of serious injury.**

On the objective prong of the deliberate indifference inquiry, the deprivation must be 'sufficiently serious[.]' Id. This is because "Eighth Amendment protection extends to "'condition[s] of urgency' that may result in 'degeneration' or 'extreme pain.'" Culp v. Koenigsmann, 2000 WL 995495 (S.D.N.Y. 2000) (quoting Chance, 143 F.3d at 702). With regard the need for removal of his Mediport, Plaintiff has alleged, at best, the *possibility* of a *future* injury. No past or present physical injury is alleged in the Complaint. He does not allege "degeneration," any "extreme pain," or a medical condition that suggests urgency. Id. Plaintiff expresses only a theoretical injury resulting from an alleged failure by the Rikers' medical personnel to "flush" his Mediport, notably that he "had to worry every month" concerning his health and that an "infection could have set in at any time." Exh. B.

Plaintiff also fails to assert that an injury was caused by an alleged failure to properly maintain or remove the Mediport. Exh. B. Instead, the exhibits show that Plaintiff received regular follow-ups and consultations with medical personnel during his incarceration and had appointments scheduled at Bellevue Hospital Center. Exhs. C, E. Therefore, Plaintiff

541934.1

8

fails to make a claim that he was not provided proper medical care in response to a "condition of urgency[.]" Culp, 2001 WL 994495.

### ii. Plaintiff fails to show that Defendants acted with a culpable state of mind.

To satisfy the subjective prong of the deliberate indifference inquiry, "the charged official must act with a sufficiently culpable state of mind." Hathaway, 99 F.3d at 553. The required state of mind, equivalent to criminal recklessness, is that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Hemmings v. Gorcyzk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Hathaway, 99 F.3d at 553 (internal citation omitted)).

Even assuming that Plaintiff satisfies the objective prong of the deliberate indifference inquiry, he cannot establish that Defendants acted with a culpable state of mind. Plaintiff appends to the Complaint exhibits that indicate he received continuous medical treatment, including scheduling of appointments at Bellevue Hospital Center. Exhs. C, E. Plaintiff alleges only that he experienced a "fear" that he might become infected or that if he were "harmed or attacked in any way it could be fatal." Exh. D. Plaintiff's bald allegations that appointments with Bellevue Hospital Center to remove his Mediport were cancelled and/or not rescheduled are insufficient to establish that Defendants acted with a culpable state of mind. Hathaway, 99 F.3d at 533.

It is settled that "prisoners do not have the right to the treatment of their choice…a correctional facility is not a health spa, but a prison in which convicted felons are incarcerated," Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y. 1992). The order in Plaintiff's chart by Nurse Baptiste indicating that his Mediport be "flushed" every month does not establish

that all medical personnel come to the same determination as to the correct maintenance of the device. Moreover, leaving the Mediport in place after May 2006 fails to constitute a constitutional deprivation. In fact, the exhibits that Plaintiff includes with his Complaint clearly show that he was treated on numerous occasions for a myriad of reasons, including hypertension, diabetes mellitus, and influenza. Exh. E. To suggest there was subjective evidence of deliberate indifference to Plaintiff's medical needs is clearly unsupported by the medical records attached to the Complaint. See also Caldwell v. United States, 992 F. Supp. 363, 366 (S.D.N.Y. 1998) (holding that a plaintiff "has no constitutional interest in being treated at a particular facility or by a specific physician…nor is plaintiff's disagreement aso to the appropriate course of treatment sufficient to establish an Eighth Amendment claim"); Williams v. Keane, 940 F. Supp. 556, 571 (S.D.N.Y. 1996) (holding that prison doctor's failure to satisfy inmate's request for a specific type of orthotic for his foot pain was at best a medical malpractice claim and did not constitute deliberate indifference).

Therefore, Plaintiff fails to demonstrate that Defendants knew and disregarded an excessive risk to his health or safety sufficient to satisfy the subjective prong of the deliberate indifference inquiry. Accordingly, the Defendants' motion to dismiss should be granted in its entirety.

### iii. Plaintiff's allegations, at best, demonstrate mere negligence or a disagreement over the appropriate medical treatment.

Allegations of a deprivation of medical treatment in violation of the Eighth Amendment are not satisfied by allegations of mere negligence, Wilson v. Seiter, 501 U.S. 294, 298 (1991); Stubbs v. Dudley, 849 F.2d 83, 86 (2d Cir. 1998), nor by "mere disagreement over the proper treatment." Chance, 143 F.3d at 703. Assuming *arguendo* that the medical personnel at Rikers were negligent in not providing Plaintiff with a monthly "flushing" of his Mediport, his claims under 42 U.S.C. § 1983 still fail as a matter of law. With regard to Plaintiff's desire to have the Mediport removed, the exhibits demonstrate that there may have been a valid medical reason to keep the Mediport in longer, notably future treatment of his cancer. Therefore, Plaintiff's allegations amount to little more than a difference of opinion with regard to the need for the continued placement of the Mediport. At best, such claims sound in medical malpractice.

## III. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF PENDENT JURISDICTION

### i. If Defendants' motion to dismiss is granted, the Court should exercise its powers under 28 U.S.C. § 1367 and decline supplemental jurisdiction over any state law claims.

Under 28 U.S.C. § 1367(a), in any action in which a federal district court has original jurisdiction, "the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Supplemental jurisdiction may be declined over a state claim if "the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) ("it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it

541934.1                                    11

dismisses the federal claims prior to trial") (citing Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614 (1988)).

For the reasons discussed above, Plaintiff's federal claims against the Defendants must be dismissed for failure to state a claim under 42 U.S.C. § 1983. If the Court grants a dismissal of the federal claims, it would be well within the Court's power to decline any supplemental jurisdiction over any state law claims that can be cobbled from the Complaint. 28 U.S.C. § 1367(a). The pendent state claims should therefore be dismissed with prejudice.

### ii. Even if the Court denies the motion to dismiss the federal claims, it should decline jurisdiction over the state law claims as they fail to state a cause of action.

The essential elements of a medical malpractice cause of action under New York law are "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." DiMitri v. Monsouri, 302 A.D.2d 420, 421, 754 N.Y.S.2d 674 (2d Dep't 2003) (internal citations omitted). In the event that the Court does not dismiss the federal claims in this matter, it should nonetheless decline to exercise jurisdiction over any pendent state claims for medical malpractice. To the extent that Plaintiff alleges state claims, they appear to sound in medical malpractice and fail to state a cause of action. As discussed above, there is no real injury alleged in the first instance, thus Plaintiff necessarily cannot show any departure from accepted medical practice that was its proximate cause. DiMitri, 302 A.D.2d at 421. For the same reason, the Court should also decline to remand any such claim to the state court whether or not summary judgment is granted or denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint against PRISON HEALTH SERVICES, INC., ROBERT DEGUZMAN, M.D., ALMA L. SCOTT-BAPTISTE, R.N., and DAWNETTE HENRY DAVIS, R.N.

Dated: New York, New York
       July 18, 2008

Respectfully Submitted,

By: _____
    Paul Stuart Haberman (PH 2771)
    HEIDELL, PITTONI, MURPHY
    & BACH, L.L.P.
    Office & P.O. Address
    99 Park Avenue
    New York, New York 10016
    Tel.: (212) 286-8585
    Fax: (212) 490-8966
    phaberman@hpmb.com
    Counsel for Defendants
    PRISON HEALTH SERVICES, INC.,
    ROBERT DEGUZMAN, M.D., ALMA
    L. SCOTT-BAPTISTE a/s/h/a "MS.
    BAPTISTE," and DAWNETTE
    HENRY DAVIS a/s/h/a "MS. DAVIS"

To:   Benjamin W. Mitchell, Jr.
      #07-A-5226
      Plaintiff, *Pro se*
      Upstate Correctional Facility
      P.O. Box 2001
      309 Bare Hill Road
      Malone, New York 12953